**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

APT MINNEAPOLIS, INC., Plaintiff,

v.

STILLWATER TOWNSHIP, Defendant.

Civil No. 00-2500 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Gary A. Van Cleve and James M. Susag, LARKIN, HOFFMAN, DALY & LINDGREN, Ltd., 1500 Wells Fargo Plaza, 7900 Xerxes Avenue South, Bloomington, MN 55431-1194, for plaintiff.

James M. Strommen and Robert J.V. Vose, KENNEDY & GRAVEN, 470 Pillsbury Center, 200 South Sixth Street, Minneapolis, MN, 55402, for defendant.

Plaintiff APT Minneapolis, Inc. ("APT") alleges in this action that defendant Stillwater Township (the "Township") violated the Telecommunications Act of 1996 ("TCA") and 42 U.S.C. § 1983 by imposing a moratorium and denying APT's tower application despite APT's compliance with the requirements of the Township's wireless communications ordinance in effect at that time. The complaint contains three counts. In Count 1, APT claims the Township violated several provisions of the TCA, entitling APT to injunctive relief, or in the alternative, a writ of mandamus. In Count 2, APT alleges the Township violated its civil rights under 42 U.S.C. § 1983, entitling it to an award of

FILED JUN 22 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD. ___
DEPUTY CLERK ___

damages, attorney's fees and costs. Finally, in Count 3, APT asks the Court to rescind the moratorium on the basis that it is discriminatory, arbitrary, unreasonable and adopted in bad faith.

This matter is before the Court on APT's motions for a temporary restraining order, preliminary injunction and summary judgment. For the reasons that follow, the Court grants APT's motion for summary judgment. It is important to note that the Congress has placed significant limitations on the authority of local government authorities to deny placement of wireless communications antennas. The Telecommunications Act of 1996 does not preempt local government decisions, but it does restrict substantially the traditional local control over zoning decisions. Consequently, the Township's decisions in this matter must be analyzed in light of Congress' determinations favorable to the nationwide provision of wireless services. APT's motions for a temporary restraining order and a preliminary injunction are denied as moot.[1]

## I. FACTS

### A. Background

APT is licensed by the Federal Communications Commission ("FCC") to provide seamless personal communications services ("PCS") to its customers. As a condition of

[1] During a telephone conference held on February 13, 2001, the Court granted APT's request for expedited consideration of its motion for summary judgment pursuant to 47 U.S.C. § 332(c)(7)(B)(v) of the TCA. Because the Court reaches the merits of the case in APT's motion for summary judgment, it is not necessary to decide APT's motion for a temporary restraining order and/or preliminary injunction.

its license, APT must ensure that its wireless network is sufficiently deployed to provide proper reception and communication within Minnesota. APT also has an affirmative obligation to provide 911 access to public safety agencies for its customers and visitors within technically compatible networks.

The provision of PCS requires the construction and placement of antennas that are capable of receiving and transmitting wireless communication signals in accordance with radio frequency standards. The necessary number and location of the antennas is determined by radio frequency engineering which takes into account several factors including population demands, topographical constraints, height of the proposed antenna, and the proximity to and height of other antennas.

Proper service coverage requires that the antenna be elevated in order to provide an unimpeded line of sight to end users' telecommunications equipment. Often times, this is accomplished by locating the antenna on a pre-existing elevated host structure such as a water or fire tower. However, if a suitable host structure is not available, a communications tower must be constructed to elevate the antenna.

## B. The Coverage Gap

A significant gap currently exists in APT's PCS coverage in the area of the Township and Washington County which includes State Highway 95, Stone Bridge Trail,

Arcola Trail and 110 Street North.[2] This coverage gap is due to the lack of a cell site in the area. The gap results in dropped calls, poor quality calls and an inability to start or answer a call. The area of poor quality service or "dead spots" poses a public safety risk for individuals and public safety organizations who rely on wireless communications in reporting emergency situations.

APT conducted a radio wave simulation to determine the appropriate location for the construction of a communications tower site to fill the coverage gap. This simulation placed the location for a communications tower on property owned by George and Evelyn Rydeen at 16277 110th Street North (the "Rydeen site").[3] APT entered into a lease agreement with the Rydeens to lease a portion of their property for the construction and operation of the communications tower. APT also sought and received approval from the Federal Aviation Administration ("FAA") that APT's construction of a tower on the Rydeen Site would not pose a hazard to air navigation.

## C. APT seeks a CUP from the Township for the Rydeen site

Pursuant to Township Zoning Ordinance, Section 2.2, Wireless Communication Antennas and Towers (the "Township ordinance"), APT had to acquire a Conditional Use Permit ("CUP") before constructing its communications tower on the Rydeen site. The

---

[2] Exhibit B to Michael P. O'Rourke's affidavit graphically depicts the area with poor or no PCS coverage.

[3] APT's preferred site location was closer to State Highway 95, but the Township's ordinance regulating wireless communication antenna and towers required a one-half mile setback from the highway, thus requiring APT to place its tower on the Rydeen site.

Township ordinance, which is modeled after Washington County's ordinance,[4] was adopted in direct response to Congress' enactment of the TCA.

On June 30, 2000, APT delivered its application with supporting documentation to the Township for construction of a 130-foot communications tower at the Rydeen site. This was the first communications tower application submitted to the Township since it passed the ordinance governing wireless communication antennas and towers. After reviewing APT's application, the Township determined that additional written materials were required.[5] APT submitted these additional materials by July 17, 2000, at which time the Township considered APT's application complete.[6]

On July 24, 2000, Township planner, Meg McMonigal ("McMonigal") issued a five-page report to the Township's Planning Commission (the "Commission") on APT's

---

[4] APT must also obtain approval from Washington County before it can begin constructing its tower on the Rydeen site. The Township makes much of the fact that APT has not yet filed an application with Washington County, therefore making this action not ripe for review. However, as explained in the record and confirmed by APT's counsel at the March 14, 2001 motion hearing, APT inquired as to the process for obtaining its CUP. It was told by a Washington County representative that APT must first obtain approval from the Township before applying with the county. APT has complied with those directives and recognizes that this action is only the first in a two-step process in obtaining the requisite approvals for construction of its communications tower.

[5] Specifically, APT was required to submit a list of property owners within 500 feet of the perimeter of the area proposed for the communications tower; a drawing documenting that the Rydeen site is one-half mile from any existing proposed park, Highway 95, the St. Croix River, and any other DNR protected lake or river; a landscape and screening plan; documentation of a lack of collocation opportunities on any existing tower; and a description of the capacity for the proposed communications tower.

[6] Minnesota state law requires an agency to approve or deny an application "relating to zoning" within 60 days from the time an application is complete or within 120 days if the agency gives notice of a 60-day extension. *See* Minn. Stat. § 15.99, subd. 2 & 3(f).

CUP application. In that report, McMonigal recommended that the Commission approve APT's application for a communications tower subject to certain conditions.

On August 3, 2000, the Commission held the first of several public hearings to consider APT's CUP application. At the meeting, APT informed the Commission that its site satisfied the requirements of the Township ordinance and that it was prepared to comply with the conditions set forth in McMonigal's July 24, 2000 report. APT also addressed concerns raised by local residents in attendance at the meeting concerning health issues, traffic, property values and aesthetics. Following extensive discussion concerning the proposed application, the Commission voted to continue the matter until the next regularly scheduled meeting on September 7, 2000.

Following the August 3 meeting, a number of residents and citizens of the Save Our Valley organization began submitting letters in opposition to construction of the communications tower. APT submitted additional documentation to McMonigal which responded to questions raised by the citizens at the meeting. On August 31, 2000, McMonigal prepared a second report, explaining that APT had supplied the Township with information addressing the concerns raised at the first meeting. Again, McMonigal recommended that APT's application be approved.

The Commission held its second public hearing on the matter on September 7, 2000. At this meeting, the Commission heard from APT, concerned residents, and Paul Roelandt, a representative of the National Park Service ("NPS"). Roelandt submitted a letter dated September 7, 2000 from Anthony Andersen of the NPS. In that letter, Andersen stated that it was NPS's position that due to the "potential impacts" of the

proposed tower location, further evaluation and an environmental assessment was required. Anderson also addressed concern for the potential adverse impact to historic buildings in the area and recommended that the Minnesota State Historic Preservation Office undertake an evaluation of potential effects.

Based on this information, the Commission voted again to table APT's application until the next meeting on October 5, 2000. Although Commission members conceded that APT satisfied the requirements of the Township ordinance, it was concerned that a communications tower is "in conflict with [the Township's] vision statement." The specific issues of concern were "health, aesthetics, and property value reduction."[7]

Following the September 7 meeting, the Commission instructed McMonigal to contact the Minnesota Historical Society regarding the proposed tower's impact on historically protected buildings in the area, which McMonigal did by letter dated September 8, 2000. During this time, APT submitted additional information to McMonigal in support of its application, including an August 8, 2000 letter from Britta Bloomberg ("Bloomberg"), Deputy State Historic Preservation Officer of the Minnesota Historical Society's State Historic Preservation Office, in which Bloomberg concludes that the proposed tower will have no effect on historic buildings in the area. Specifically, the letter states that "[b]ased on available information, we conclude that **no properties**

---

[7] The Commission also gave public residents five days to submit any additional comments and documentation into the record. On September 12, 2000 Save Our Valley submitted a packet of information which included letters, signatures of over 100 citizens opposing the tower, and technical information on wireless services and safety.

**eligible for or listed on the National Register of Historic Places** will be affected by this project." (Emphasis in original.)

Upon receipt of this additional information, McMonigal prepared a third report concerning APT's application in which McMonigal references Bloomberg's August 8, 2000 letter. Once again, McMonigal recommended that the Commission approve APT's CUP application.

Meanwhile, on September 14, 2000, the Township Board of Supervisors (the "Board") held its first of two regular monthly meetings. Although APT's application was not on the agenda, one of the Township residents opposing the APT application raised the issue of a moratorium ordinance during a public comment period. At the conclusion of the Board's second regularly scheduled meeting on September 28, 2000, the Board instructed the Township attorney "to prepare the necessary information and documents with respect to a moratorium to be considered at the next Town Board meeting." Shortly thereafter, APT learned for the first time that the Township was considering a moratorium ordinance with respect to communication towers.

On October 5, 2000, the Commission held its third meeting on APT's CUP application. At the meeting, the Commission raised the possibility of adopting a moratorium ordinance to conduct a planning study to examine potential changes to its currently existing zoning ordinance regulating wireless communication antennas and towers. The Commission accordingly adopted a recommendation that the Township Board enact the moratorium ordinance.

On or around October 9, 2000, McMonigal received a response to her September 8, 2000 correspondence to the Minnesota Historical Society. In a letter dated October 9, 2000, Dennis Gimmestad, Government Programs and Compliance Officer for the Minnesota Historical Society's State Historic Preservation Office, recommended that a review be conducted of the potential historic buildings which might be affected by the project.

On October 11, 2000, APT's CUP application came before the Board for consideration as well as the proposed moratorium ordinance forwarded on by the Commission. At the meeting, the Board moved for adoption of a moratorium ordinance. According to APT, it was not given an opportunity to address the Board prior to its vote on the ordinance. The next day, the Board adopted a resolution, directing a six-month moratorium ordinance be approved "on the construction, erection, placement, reconstruction, enlargement or expansion of any tower within the Town and the development and use of property for such purposes." The moratorium prohibits CUP applications from being "accepted, considered or approved by the Town" during "the effective period of this Interim Ordinance" and "prohibits the further consideration and approval of any pending application for town work." The duration of the moratorium would be the shorter of six months from the ordinance's effective date or until the Board adopted an amended tower ordinance.[8]

---

[8] The moratorium was still in effect at the motion hearing. According to the Township's counsel, the Board was scheduled to vote on an amended tower ordinance on March 22, 2001. At the latest, the moratorium would expire on April 10, 2001.

Following adoption of the moratorium, the Township offered APT the option to extend the state law 120-day deadline under Minn. Stat. § 15.99 to allow for quicker review of APT's application once the moratorium expired. APT declined.[9] Thus, on October 26, 2000, the Board acted on APT's application as required by state law and officially rejected APT's CUP application, citing the moratorium as the basis for its rejection. On November 13, 2000, APT filed this lawsuit.[10]

## II. ANALYSIS

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[9] As explained by APT's counsel at the motion hearing, APT believed the Township's adoption of the moratorium ordinance violated the TCA and as such, it needed the Township to make a decision on APT's application in order to allow APT to seek judicial review of that decision pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

[10] Although both parties submit additional factual accounts of events and activities which have transpired since APT filed suit, the Court declines to consider those facts in determining whether the Township violated the TCA, particularly as to whether the Township's denial is supported by substantial evidence in the written record.

Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *See id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *See Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *See Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir. 1981).

**B. Telecommunications Act Claims (Count I)**

The TCA became law on February 8, 1996. Congress passed the Act to provide a "pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." H.R. Conf. Rep. No. 104-458 (1996), *reprinted in* 1996 U.S.C.C.A.N. 10, 1124; *APT Pittsburgh Ltd. P'ship v. Penn Township Butler County of Pennsylvania*, 196

F.3d 469, 473 (3d Cir. 1999); *Sprint Spectrum L.P. v. Town of Easton*, 982 F. Supp. 47, 49 (D. Mass. 1997). The TCA is intended to "stop local authorities from keeping wireless providers tied up in the hearing process." *Town of Easton,* 982 F. Supp. at 49.

Although the TCA does not completely preempt state and local government authority to make decisions regarding the placement of wireless communications services, it places significant limitations on that authority. Section 332(c)(7) provides, in its entirety:

> (7) Preservation of local zoning authority
>
> (A) General authority
>
> Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
>
> (B) Limitations
>
> (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof--
>
> (I) shall not unreasonably discriminate among providers of functionally equivalent services; and
>
> (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
>
> (ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.
>
> (iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.
>
> (iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal

> wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.
>
> (v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

47 U.S.C. § 332(c)(7). APT contends that the Township violated three of the above-quoted limitations. Specifically, APT claims the Township's actions: 1) prohibit or have the effect of prohibiting the provision of personal wireless services in violation of § 332(c)(7)(B)(i)(II); 2) violated § 332(c)(7)(B)(ii) by failing to act on APT's CUP application within a reasonable time; and 3) are not supported by substantial evidence in a written record in violation of § 332(c)(7)(B)(iii).

**1. Prohibitory Effect on Personal Wire Services**

APT contends that the Township's adoption of a six-month moratorium on the acceptance, consideration and approval of cell tower applications "prohibits or ha[s] the effect of prohibiting the provision of personal wireless services" in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). To support this argument, APT refers the Court to six moratorium cases previously decided by other courts. According to APT, there are four factors which courts consider in determining whether or not a local government's enactment of a moratorium violates the TCA. These factors are: 1) the time between the adoption of the

TCA and the moratorium; 2) whether or not there are circumstances calling for deliberation and study under the Act; 3) whether the moratorium was adopted before or after a comprehensive regulatory scheme governing tower applications was enacted; and 4) whether or not the moratorium operates as a *de facto* denial and is the product of open and vocal hostility. APT contends that when these factors are measured against the record in this case, the Court must conclude that the Township violated the anti-prohibition clause of the TCA.

The Township contends that the issue of whether the moratorium violates § 332(c)(7)(B)(i)(II) is moot because the moratorium is nearly at an end and will likely have expired by the time the Court issues its decision. Further, citing *Sprint Spectrum L.P. v. Willoth,* 176 F.3d 630, 641-42 (2d Cir. 1999) and *APT Pittsburgh Ltd P'ship v. Penn Township Butler County of Pennsylvania*, 196 F.3d 469 (3d Cir. 1999) for support, the Township maintains that APT has not satisfied its burden of demonstrating that the Township's denial of its application for a site permit where only minimal gaps of coverage in a remote area exist has any prohibitive effect on PCS services.[11]

As a threshold matter, the Court addresses the Township's mootness argument. The mootness doctrine derives from Article III of the United States Constitution limiting

---

[11] The parties dispute who bears the burden on this issue. APT contends that the burden of proof is on the Township for all alleged violations of the TCA. In contrast, the Township claims that the provider bears the burden of demonstrating a violation of the anti-prohibition clause of the TCA. *See Town of Amherst v. Omnipoint Communications Enter., Inc.*, 173 F.3d 9, 14 (1st Cir. 1999); *360 Degrees Communications Co., v. Board of Supervisors of Albermarle County*, 211 F.3d 79, 88 (4th Cir. 2000). It appears from the Court's review that, in the majority of cases, the telecommunications provider carries the burden for proving a violation of § 332(c)(7)(B)(II), while the local government authority bears the burden of proving that its denial of a site permit is supported by substantial evidence in the record under § 332(c)(7)(B)(iii). *See infra* Part II.B.2.

federal court jurisdiction to "actual, ongoing cases and controversies." *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000); *Beck v. Missouri State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994). A case is considered moot when "the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . . and a federal court can no longer grant effective relief.'" *Haden*, 212 F.3d at 469 (quoting *Beck*, 18 F.3d at 605). "If a plaintiff has already received the desired relief, then there is no need to continue an action whose intended result is the granting of such relief." *Trafford v. Penno*, Civ. No. 90-0465B, 1991 WL 311896 at *5 (D. R.I. July 11, 1991) (citing *DeFunis v. Odegaard*, 416 U.S. 312 (1974)).

The Court has little trouble concluding that live issues of dispute survive the moratorium's expiration.[12] Remaining unresolved is the issue of whether the Township's adoption of the moratorium ordinance and its substantive provisions violated the anti-prohibition clause of the TCA. Should the Court find that the moratorium was imposed in violation of § 332(c)(B)(i)(II), APT will be entitled to an order from the Court directing the Township to issue APT a permit to construct its communications tower. Additionally, APT has made a claim for damages under 42 U.S.C. § 1983 arising from the Township's alleged violation of the TCA. *See Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 8 (1978) (claim for actual and punitive damages saves plaintiff's claim from mootness); *Penno*, 1991 WL 311896 at *5 ("An assertion of monetary

---

[12] While the Court does not know whether the Board voted to adopt the amended ordinance at its March 22, 2001 meeting, the terms of the ordinance provide that the moratorium would expire on April 10, 2001 at the latest. Thus, assuming no motions to extend the ordinance have been made, it is safe to presume that the moratorium has expired.

damages generally saves a claim from mootness.").[13] For these reasons, the Court finds that the moratorium's expiration does not render moot APT's claim under § 332(c)(B)(i)(II) of the TCA, the Fourth Circuit's decision in *Cellco Partnership v. Russell,* No. 98-2123, 1999 WL 556444 (4th Cir. 1999) (unpublished decision), notwithstanding.[14] *See Planned Parenthood,* 558 F.2d at 865 (finding issues in case not moot despite moratorium's expiration); *Penno,* 1991 WL 311896 at *5 (concluding

---

[13] The only issue arguably mooted by the moratorium's expiration is APT's claim in Count III of its complaint seeking to enjoin enforcement of the moratorium because, after its expiration, there is nothing upon which an injunction can operate. *See Planned Parenthood of Minnesota, Inc. v. Citizens for Community Action,* 558 F.2d 861, 865 (8th Cir. 1977) (noting that the preliminary injunction issued by the district court preventing the enforcement of the moratorium ordinance, which expired in the interim, appears moot because the injunction has no present effect). But that issue was already mooted by the fact that the Court granted APT's request for expedited review on the merits.

[14] In *Russell*, the Fourth Circuit declined to consider whether the moratorium adopted in that case was a general ban or policy prohibiting PCS services in violation of § 332(c)(B)(i)(II) because the moratorium had expired. *See id.* at *2-3. Even if the Court believed the moratorium's expiration mooted this issue, APT's claim seems well-suited for application of the "capable of repetition yet evading review" exception to the mootness doctrine. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990). A matter is "capable of repetition yet evading review" if: 1) the matter is of a type that will not last long enough to afford an opportunity for full litigation; and 2) there is a "reasonable expectation" that it will be subject to the same action in the future." *Lewis,* 494 U.S. at 481; *Russell,* 1999 WL 556444 at *3. In *Russell,* the court concluded that, while "a close question," the factual record did not contain sufficient evidence to show that the telecommunications provider had a "reasonable expectation" that the moratorium would be re-instituted or that the county would adopt another moratorium. *Id.* The record in this case provides stronger evidence than in *Russell* that either an extension or new moratorium might be imposed by the Township. While the interim ordinance provides that it would expire by April 10, 2001 at the latest, it is significant that the authority under which the Township enacted the ordinance, Minn. Stat. § 462.355, subd. 4, permits a local authority to extend an interim ordinance "for such additional periods as the municipality may deem appropriate, not exceeding a total additional period of 18 months." The Township has already demonstrated a willingness to utilize statutory extension periods, as evidenced by its extension under Minn. Stat. § 15.99 while APT's application was pending. This extension was utilized despite APT's full compliance with the statutory requirements of the ordinance. On these facts, APT likely could demonstrate a "reasonable expectation" of repeated behavior to warrant application of this exception.

moratorium's expiration does not moot plaintiff's claim for damages). The Court thus proceeds on to consider the merits of APT's claim.

To date, six courts have reviewed whether a local authority's imposition of a moratorium violates the TCA. *See Sprint Spectrum v. City of Medina,* 924 F. Supp. 1036 (W.D. Wash. 1996); *Sprint Spectrum v. Town of West Seneca,* 659 N.Y.S. 2d 687 (N.Y. Sup. Ct. 1997); *Sprint Spectrum v. Jefferson County,* 968 F. Supp. 1457 (N.D. Ala. 1997); *Sprint Spectrum v. Town of Farmington,* No. 3:97 CV 863 1997 WL 631104 (D. Conn. Oct. 6, 1997); *Sprint Spectrum v. Town of Durham,* No. Civ. 97-305 1998 WL 1537756 (D. N.H. 1998); *National Telecommunications Advisors v. Board of Selectmen of the Town of West Stockbridge,* 27 F. Supp. 2d 284 (D. Mass. 1998). Upon review of the factual record and the relevant case law, the Court concludes that the Township's adoption of a six-month moratorium preventing APT from obtaining approval of its application "prohibits or has the effect of prohibiting the provision of personal wireless services" in violation of the TCA.

Both the timing and scope of the moratorium adopted in this case closely resemble the unlawful moratoria adopted in *Jefferson County*, *City of Farmington* and *Town of Durham.* In *Jefferson County,* the court held that the county's issuance of a third moratorium prohibiting the processing and issuance of applications fifteen months after the TCA became law and fourteen months after the county enacted a comprehensive regulatory scheme pursuant to the TCA that had "'the effect of denying the provision of this new technology and its advantages' to its customers." 968 F. Supp. at 1468 (quoting *Western PCS II,* 957 F. Supp. at 1238). Likewise, in *City of Farmington,* the district court held that the city's adoption of a nine-month moratorium sixteen months after the

TCA was enacted and which prohibited the consideration and approval of all applications violated § 332(c)(7)(B)(i)(I) of the TCA.

In this case, the Township adopted its moratorium on October 12, 2000, nearly five years after the TCA was enacted and, as in *Jefferson County,* long after it had already adopted a comprehensive regulatory scheme governing wireless communication facilities. These facts stand in stark contrast to those in *City of Medina,* a case relied on by the Township. In *Medina,* the city council adopted a six-month moratorium on the issuance of permits for wireless communication facilities a mere 5 days after the TCA was enacted in an attempt to deal with "an expected flurry of applications." 924 F. Supp. at 1037. In that case, the court determined that because the city lacked a comprehensive tower ordinance and the moratorium prohibited only the issuance of permits, the moratorium was a reasonable and bona fide effort to incorporate the requirements of this new legislation. *See id.* at 1040-41.

The scope of the moratorium ordinance is also broader than is necessary to accomplish the Township's goals. Unlike the moratorium in *City of Medina* which continued to accept and process applications while the moratorium was pending, *see* 924 F. Supp. at 1040, the Township's moratorium, like that in *Jefferson County* and *City of Farmington*, extends to the "accept[ance], consider[ation], [and] approv[al] of all wireless communication tower applications and prohibits the further consideration and approval of any pending application for tower work." It is unclear why, if the Township was merely amending its current ordinance, the Township could not continue to accept and begin preliminary processing of CUP applications.

While *Board of Selectmen* bears some similar characteristics to the instant case, it too is distinguishable. 27 F. Supp. 2d 284 (D. Mass. 1998). There, the court upheld a six-month moratorium because the town had not yet enacted a tower ordinance in response to the TCA. Here, the Township has already enacted an ordinance expressly governing wireless communication towers, an ordinance which APT fully complied with at the time its application came before the Board.

While the Court by no means suggests that § 332(C)(7)(B)(i)(II) precludes local governments from ever imposing valid moratoria in an effort to amend their tower ordinances, it is the timing and facts of this case which cause the Court to question whether the Township's actions were "a necessary and bona fide effort to act carefully in a field with rapidly evolving technology." *Medina,* 924 F. Supp. at 1466. As the district court in *Board of Selectmen* stated: "In the end . . . each situation must be independently examined." 27 F. Supp. 2d at 287. In this case, that independent examination leads the Court to the conclusion that the Township's adoption of the moratorium "prohibits or has the effect of prohibiting the provision of personal wireless services" in violation of § 332(C)(7)(B)(i)(II) of the TCA.

**2. Substantial Evidence**

APT also contends that the Township's denial of its CUP application is not supported by "substantial evidence" as required by the TCA. *See* 47 U.S.C. § 332(C)(7)(B)(iii). Again, the applicable provision states that:

> [a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities **shall be in writing and supported by substantial evidence contained in a written record**.

(Emphasis added.) In determining whether the Township's denial is supported by substantial evidence, the Court must employ "the traditional standard used for judicial review of agency actions." *Sprint Spectrum L.P. v. Jefferson County*, 968 F. Supp. 1457, 1468-69 (N.D. Ala. 1997) (quoting H.R. Conf. No. 104-458, 104th Cong. 2d Sess. 208). "Substantial evidence, as construed by the courts, means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1469 (citations omitted). The Township bears the burden of proving that its decision was supported by substantial evidence. *See APT Minneapolis Inc. v. City of Maplewood,* No. 97-2082, 1998 WL 634224 at *4 (D. Minn. 1998) (quoting *Sprint Spectrum*, 982 F. Supp. at 49 ("[T]he TCA shifts the burden of proof to the government agency that denied the applicant's siting request 'rather than burdening the applicant with producing substantial evidence supporting its approval.'") (citation omitted)); *US West Communications, Inc. v. City of Vadnais Heights,* No. 97-2248 at 9 (D. Minn. May 15, 1998) (unpublished opinion); *Prime Co. Pers. Communications v. Village of Fox Lake,* 26 F. Supp. 2d 1052, 1064 (N.D. Ill. 1998) (placing the burden on the local government authority to prove its denial is supported by substantial evidence); *Cellco P'ship v. Town Plan & Zoning Comm'n,* 3 F. Supp. 2d 178, 182 (D. Conn. 1998) (same). *But see Cellular Tel. Co. v. Zoning Bd. of Adjustment*, 24 F. Supp. 2d 359, 366 (D. N.J. 1998) ("The Board's decision is afforded deference with the burden on plaintiffs to overturn

that decision . . ."); *Century Cellunet v. City of Ferrysburg,* 993 F. Supp. 1072, 1077 (W.D. Mich. 1997) (same).

There is no dispute that the Township complied with the writing requirement. On October 26, 2000, the TCA issued its Findings of Fact and Decision expressly denying APT's application, citing the moratorium as the basis for its decision. Thus, the sole issue is whether the Township's decision is supported by substantial evidence in the written record.

The Township claims its issuance of the moratorium and thus its denial of APT's application is supported by substantial evidence in the written record. It asserts five reasons for adopting the moratorium:

> 1) The National Park Service ("NPS') requested a visual impact review and noted that APT had not prepared an Environmental Assessment;
>
> 2) the Minnesota Historical Society recommended a review of the tower's impact on the multiple buildings in the area;
>
> 3) wireless telecommunications is a rapidly advancing technology that may allow alternative structures and heights to fulfill communication needs;
>
> 4) substantial and organized residential opposition existed to the site proposed; and
>
> 5) additional regional interests emerged seeking a coherent tower policy on a multi-jurisdictional basis within the St. Croix Riverway area.

APT contends that none of these asserted reasons is a valid rationale supported by substantial evidence in the record to justify the Township's denial of its application. For the reasons provided below, the Court agrees with APT.

**a. The National Park Service ("NPS") letter**

The Township relies on a September 7, 2000 letter from Anthony Andersen of the United States Department of the Interior, National Park Service, in which Andersen recommends that a visual analysis of the proposed tower's location to the St. Croix National Scenic Riverway be conducted. The letter further recommends that APT conduct an environmental assessment pursuant to FCC regulations because of the potential adverse impact on national historic buildings and sites in the area.

The Township's reliance on the contents of this letter is erroneous because the record reveals that APT complied with the concerns raised in Andersen's letter. The public hearing minutes of the Planning Commission's September 7, 2000 meeting reveal that concern over the tower's impact on the St. Croix Riverway was raised, to which APT counsel assured residents that the proposed project was sufficiently outside the boundary of the scenic riverway.[15] Additionally, APT completed an environmental assessment in August 2000 and it obtained express confirmation in an August 8, 2000 letter from the Minnesota State Historic Preservation Office that its project did not adversely affect historic properties in the area. In light of this record evidence, the Court finds that the Township's reliance on Andersen's letter is not supported by substantial evidence. If

---

[15] Interestingly, Andersen's September 7, 2000 letter expressly mentions that APT's proposed tower is located approximately one-half mile from the boundary of the St. Croix Riverway. It thus appears that a review of the statutory language of the Wild and Scenic Rivers Act would have confirmed that APT's proposed tower was beyond the one-quarter mile statutory boundary established by 26 U.S.C. § 1275(d) of the Act.

anything, the record reveals just the opposite, that is, that APT complied with the issues the Township claims justify its denial of APT's application.

**b. Historic Buildings**

The Township next relies on an October 9, 2000 letter from Dennis Gimmestad, Government Programs and Compliance Officer for the Minnesota Historical Society's State Historic Preservation Office, in which he recommends a review of the effect APT's proposal could have on historic buildings in the area. This letter, however, directly contradicts the above-mentioned August 8, 2000 letter from Bloomberg, of the same office, who, upon review of APT's environmental assessment, specifically concluded that "**no properties eligible for or listed on the National Register of Historic Places** will be affected by [APT's] project." (Emphasis in original.) Moreover, Gimmestad's letter arrived after the Planning Commission voted to recommend adoption of a moratorium ordinance and there is no evidence in either the minutes of the Board's October 11, 2000 meeting or its October 26, 2000 Findings of Fact and Decision that the Township considered the letter in reaching its decision. In any event, even if the Board did consider the letter in denying APT's application, Bloomberg's letter adequately addresses and responds to the issues raised in Gimmestad's letter. Based on this evidence, the Court finds that the Township's reliance on this ground is not supported by substantial evidence.[16]

---

[16] The factual circumstances in the instant case differ from those in *AT&T Wireless PCS v. Winston-Salem Zoning Bd. of Adjustment,* 172 F.3d 307 (4th Cir. 1999), which also involved a local authority's concern over the tower's negative visual impact on historical properties. *See id.*

(Footnote continued on next page.)

### c. Advancing Technology

The Township next argues that rapidly advancing technologies in wireless telecommunications, such as satellite technology and stealth design,[17] justified imposing the moratorium. While new technological advances may, under certain circumstances, provide a legitimate basis for imposing a moratorium, the Court finds that such circumstances are not present here.

A review of the Township ordinance indicates that the ordinance was already written broadly enough to incorporate stealth design camouflage advancements. Section 9(D) of the ordinance expressly provides that:

> The tower location shall provide the maximum amount of screening for off-site views of the facility. **The Zoning Administrator reserves the right to require creative design measures to camouflage facilities by integrating them with existing buildings and among other existing uses.** Existing on-site vegetation shall be preserved to the maximum extent practicable.

§ 2.22, 9(D) (emphasis added).

As for the Township's reference to satellite technology, it is quite clear that while such technology is emerging, the use of communication towers and antennas is still the

---

(Footnote continued.)
at 315. In that case, the record revealed that "[AT&T's proposed] tower would be located 148 feet from the original structure of the [former James Hanes House]," which, according to the local historic resources planner, "is currently listed on the study list of houses that are eligible for listing on the National Register." *Id.* at 316. The planner testified further "that the condition and quality of the Hanes House's surrounding property is as important as the physical structure of the house itself in determining whether the Hanes House eventually secures a place on the National Register." *Id.* These facts stand in stark contrast to Bloomberg's conclusion that "no properties eligible or listed on the National Register" would be affected by APT's project.

[17] Stealth design is used to better camouflage a tower's appearance with the surrounding landscape.

most prevalent and realistic technology in the industry at the present time. Indeed, § 332(c)(7) of the TCA is premised on Congress' understanding and anticipation that the technology for communicating wireless signals would be towers and antennas. Thus, although the Court believes satellite technology will likely one day replace the current technology and possibly render obsolete § 332(c)(7),[18] the mere availability of such technology is not, standing alone, a sufficient basis for the Township's moratorium.[19]

**d. Resident Opposition**

The Township next claims that the substantial and organized residential opposition to APT's proposed tower application supports its denial of APT's application. The record reveals that local residents were primarily concerned with aesthetic considerations, decreasing property values, and the health effects associated with the tower.

The Township draws the Court's attention to a recent case out of the Fourth Circuit, *AT&T Wireless PCS Inc. v. City of Virginia Beach,* 155 F.3d 430 (4th Cir. 1998), in support of its argument that a local authority's denial of a tower application in response to local opposition over aesthetic concerns is a legitimate basis for denying a CUP application. *Id.* 430-31. Most courts, however, including this one, have concluded that "generalized concerns" over aesthetic considerations is an insufficient basis to satisfy

---

[18] Use of satellites to communicate wireless signals would substantially, if not totally, eliminate the need for telecommunication providers to obtain conditional use permits, variances or other types of local zoning permits from local authorities.

[19] At the motion hearing, APT's counsel posited that, given the current state of satellite technology in the industry, the Township would likely violate the anti-prohibition clause of the TCA were it to amend its ordinance to require providers to launch satellites as opposed to constructing towers and antennas.

the substantial evidence standard. *See City of Maplewood,* 1998 WL 634224 at *5 (D. Minn. 1998); *see also Vadnais Heights,* No. 97-2248, at 10 ("Vague assertions about the aesthetic and visual impacts of a proposed wireless service facility, such as those offered by Vadnais Heights, do not constitute substantial evidence sufficient to comport with the TCA.") *Omnipoint Communications, Inc. v. Foster Township,* 46 F. Supp. 2d 396, 409 (M.D. Pa. 1999) (concluding that "generalized concerns" regarding aesthetics and property values fail to provide substantial evidence for the Board's determination that the proposed tower would not be harmonious with the surrounding properties"); *Prime Co. Pers. Communications,* 26 F. Supp. 2d at 1063 ("unsupported constituent testimony opposing cellular tower locations generally will not satisfy the substantial evidence test"); *Omnipoint Corp v. Zoning Hearing Bd. of Pine Grove Township,* 20 F. Supp. 2d 875, 880 (E.D. Pa. 1998) ("Generalized concerns and conclusive statements within the record about the aesthetic and visual impacts on the neighborhood do not amount to substantial evidence."): *Illinois RSA No. 3 Inc. v. County of Peoria,* 963 F. Supp. 732, 745 (C.D. Ill. 1997); *Bell South Mobility Inc. v. Gwinnett County,* 944 F. Supp. 923, 928 (N.D. Ga. 1996).

There is, quite obviously, conflicting case law on this issue, *see Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 495 (2d Cir. 1999) (observing that "[c]ourts have split as to the weight to be afforded to constituent testimony on aesthetics"), and to date, the Eighth Circuit has not reviewed the issue. Accordingly, the Court stands by its prior

decision and finds that generalized opposition to aesthetic considerations is not a legitimate basis for denying APT's application.[20]

In addition to aesthetic concerns, the record also contains evidence of resident opposition to decreasing property values and adverse health effects. Neither rationale is supported by substantial evidence in the record. In response to concerns raised by local residents regarding the tower's impact on property values, APT supplemented the record with two comprehensive reports from two real estate experts demonstrating that there has been no adverse impact on property values by towers constructed in other areas. In response, residents obtained signatures from two representatives of local realty offices who agreed there would be "a property loss of up to 20% for the local citizens near the tower." A third realty representative declined to quantify the loss tower construction could cause to property values, stating instead that tower construction, along with electrical wires and railroad tracks, "usually . . . have an adverse effect on the property value of homes." While the evidence put forth by local residents is entitled to more weight than if the record consisted solely of general and unsupported constituent testimony, the volume and quality of the evidence is not strong enough to satisfy the Township's burden on this issue, particularly in light of APT's comprehensive expert testimony submitted in the record. *See Town of Oyster Bay,* 166 F.3d at 496 (concluding that "[a] few generalized concerns about a potential decrease in property values,

[20] It is also significant that Minnesota courts have held that resident opposition due to aesthetic and property devaluation concerns is an insufficient basis for a local government authority's denial of a special-use permit. *See e.g., Luger v. City of Burnsville*, 295 N.W.2d 609, 612 (Minn. 1980) (holding that "the mere 'aesthetic concerns' of neighboring landowners will not rise to the level of serious health, safety, or pubic welfare considerations which justify denial of an application for a special-use permit").

especially in light of AT&T's contradictory expert testimony, does not seem 'adequate to support a conclusion' that the permits should be denied").

The record also contains numerous references regarding the possible adverse health effects of the proposed tower. However, numerous courts have concluded that § 332(c)(7)(B)(iv) precludes consideration of such concerns and thus cannot constitute substantial evidence. *See Town of Oyster Bay,* 166 F.3d at 494-95; *Illinois RSA No. 3,* 963 F. Supp. at 745 ("Under the Telecom Act . . . the County [can] not consider potential health effects of Plaintiff's proposed cell site."); *Virginia Beach,* 155 F.3d at 431 n.6 (noting that § 332(c)(7)(B)(iv) of the TCA precludes consideration of "health concerns from radio emissions").

#### e. Regional Interests

The Township's final basis for the moratorium is that "additional regional interests emerged seeking a coherent tower policy on a multi-jurisdictional basis with the St. Croix Riverway area." In its findings and purpose section of the moratorium ordinance, the Township explains that "issues are arising and information is being developed relating to the impact of towers on the St. Croix River Valley and Wild and Scenic River Corridor. The Town needs to also evaluate its official controls in light of these regional planning concerns." But a review of the record demonstrates that, while representatives from five surrounding counties have expressed a desire and begun preliminary discussions for developing a uniform regional-wide plan which might eventually culminate in regional-wide legislation, notes from these meetings reveal that the project is still in its

developmental stages. The Court is thus not persuaded that these interests sufficiently justify the Township's moratorium and thus its denial of APT's application.

Finally, the Court might accord greater weight to the Township's rationales if other facts and circumstances present in this case did not render the Township's imposition of the moratorium so questionable. It is clear that APT complied with the statutory requirements of the Township's ordinance expressly governing wireless communication towers. McMonigal submitted three separate reports at each stage of APT's application process, in which she concluded in each report that APT's application satisfied the statutory requirements of the ordinance and recommended that the application be approved. After each Planning Commission meeting, APT supplemented the record with additional information to address the concerns of the local residents.

Despite these facts, APT's application was denied. That denial came about because of a moratorium the Township imposed three months after APT submitted a complete and approvable application and shortly after local residents opposing APT's application proposed the idea at a Board meeting in late September. Under these facts, the Court cannot but suspect that the Township's moratorium was issued more for purposes of delay than for legitimate reasons supported by substantial evidence. *See Jefferson County,* 968 F. Supp. at 1468 (stating that series of moratoria caused substantial delay and thus had an effect of prohibiting PCS services); *Town of Farmington,* 1997 WL 631104 at *6 ("The institution of the moratorium was a mere delay tactic intended to further prevent the erection of Sprint's monopole"). Other courts have shown a similar reluctance to find substantial evidence where the record reveals that a provider's

continual efforts to obtain approval of its application are futile. The following statement from *Sprint Spectrum v. Town of Durham,* No. Civ. 97-305, 1998 WL 1537756 (D. N.H. 1998), is revealing:

> [W]here a party has done everything possible to support an application and "it appears from the record that there is nothing [the applicant] could have done which would have met with approval of the Board," a denial under those circumstances is not based on substantial evidence in a written record.

*Id.* at *8 (quoting *OPM-USA Inc. v. Board of County Comm'rs of Brevard County,* 7 F. Supp. 2d 1316, 1327 (M.D. Fla. 1997)). That statement accurately describes the circumstances here. Accordingly, for all the above-stated reasons, the Court finds that the Township has failed to satisfy its burden that its denial of APT's application is supported by substantial evidence in the record.[21]

**Remedy for Violations of the TCA**

Because the Township's actions have had the effect of prohibiting the provision of personal wireless services and its denial of APT's application lacks substantial evidence, APT is entitled to summary judgment on Count 1 of its complaint. Although the TCA does not expressly provide a remedy for violations of the TCA, *see* 47 U.S.C. § 332(c)(7)(B)(v), courts have uniformly held that an injunction directing the local authority to issue the special permit is an appropriate remedy under the Act. *See City of Maplewood,* 1998 WL 634224 at *6 (granting injunctive relief directing local authority to issue the special permit); *Vadnais Heights* at 11 (issuing an injunction directing Vadnais

---

[21] Because the Court finds a violation of both the anti-prohibition clause and substantial evidence standard of the TCA, either of which entitles APT to the relief it seeks, the Court does not consider whether the Township also violated the reasonable time requirement under § 332(c)(7)(B)(ii) of the TCA.

Heights to issue the special use permit to US West); *see also Town of Oyster Bay*, 166 F.3d at 497 (affirming district court's imposition of an injunction was an appropriate remedy under the TCA); *Illinois RSA No. 3*, 963 F. Supp. at 747; *Town of Durham*, 1998 WL 1537756 at *8 (same). Based on this precedent, the Court will issue an injunction directing the Township to issue a site permit in favor of APT.

## C. Section 1983 Claim (Count II)

The Court further finds that the Township violated 42 U.S.C. § 1983 when it denied APT's federally established rights under the TCA. This ruling is consistent with the Court's previous decision in *APT Minneapolis, Inc. v. City of Maplewood*, and other courts that have concluded that the TCA creates substantive rights, a violation of which is cognizable under § 1983. 1998 WL 634224 at *7.

The Court may award attorney's fees to the prevailing party in a § 1983 action under 42 U.S.C. § 1988.[22] A plaintiff is the "prevailing party" when the relief granted by the court "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits plaintiff." *Pedigo v. P.A.M. Transport, Inc.*, 98 F.3d 396, 397-98 (8th Cir. 1996). Absent unusual circumstances, a prevailing plaintiff is entitled to an award of attorney's fees:

> [A] district court's discretion to deny attorney's fees to a prevailing plaintiff is narrow. Prevailing plaintiffs should ordinarily recover fees unless special circumstances would make such an award unjust.

---

[22] 42 U.S.C. § 1988(b) provides:

> In any action or proceeding to enforce a provision of sections . . . 1983, of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

*Jenkins by Jenkins v. State of Missouri.*, 127 F.3d 709, 716 (8th Cir. 1997).

The Township has not shown that "special circumstances" make an award of attorney's fees unjust in this case. On this basis alone, APT is entitled to its fees. The Court thus grants APT's request for fees under 42 U.S.C. § 1988, but the Court is not inclined to consider other categories of damages APT claims are warranted in this case.

**ORDER**

Based on the above and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. APT's motion for summary judgment [Docket No. 7] is **GRANTED**;

2. An injunction is hereby entered requiring the Township of Stillwater to issue a CUP for the Rydeen site to APT within twenty (20) days of this Order.

3. APT's motion for a temporary restraining order and preliminary injunction [Docket No. 7] is **DENIED as moot**.

4. Within thirty (30) days of this Order, APT shall submit an affidavit setting forth the attorney's fees and costs it expended prosecuting this lawsuit against the Township.

DATED: June 22, 2001
at Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge