**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

APT MINNEAPOLIS, INC.,

Plaintiff,

v.

STILLWATER TOWNSHIP,

Defendant.

Civil No. 00-2500 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER ON POST-JUDGMENT MOTIONS**

---

Gary A. Van Cleve and James M. Susag, LARKIN, HOFFMAN, DALY & LINDGREN, Ltd., 1500 Wells Fargo Plaza, 7900 Xerxes Avenue South, Bloomington, MN 55431-1194, for plaintiff.

James M. Strommen and Robert J. V. Vose, KENNEDY & GRAVEN, 470 Pillsbury Center, 200 South Sixth Street, Minneapolis, MN, 55402, for defendant.

This dispute over a wireless communication tower application once again came before the Court on August 2, 2001 on the following motions: 1) the Township's Rule 52(b) motion to amend findings; 2) the Township's Rule 60(b)(2) and (6) motion to set aside and vacate final judgment; and 3) APT's Motion for Order to Show Cause why Stillwater Township should not be held in contempt of the Court's June 22, 2001 Order granting APT's motion for summary judgment.

The Court denies all three motions, but orders the Township to grant a Conditional Use Permit to APT within ten days. In that permit, the Township may impose only the

FILED AUG 15 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

eight conditions recommended by the Town Planner prior to the October 2000 decisions made by the Township, any additional modifications agreed to by APT, and no more.

The Township's creative attempts to change the conditions of the permit to require construction of a stealth silo at a different non-leased location on the Rydeen farm cannot stand and violate this Court's Order of June 22, 2001. Although the Court takes no position on the merits of these changes, the Township lost its authority to impose the new conditions in October 2000, when it twice violated the Telecommunications Act of 1996. In short, it is too late in the game for the Township to be changing the rules. New conditions, which may well have been validly imposed before federal law was violated, can no longer be required. At this stage, changes in the conditional use permit may be affected only with the agreement of APT or by action of other governmental bodies with authority to act, not by the unilateral actions of the Township.

The Court surely understands the predicament faced by a local governing body that obviously wishes not to approve this conditional use permit. But it must be noted that it was the actions of the Township that caused the dilemma. The Township could have anticipated a permit application and enacted an ordinance to its liking **before** applications were made. But by rejecting an application which complied with the then-existing ordinance and by imposing a moratorium, the Township violated Federal law and forfeited its ability to further alter the terms of the permit.

## BACKGROUND

On June 22, 2001, the Court granted APT's motion for summary judgment. In its Order, the Court determined that the Township violated two separate and independent

provisions of the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332(c)(7). Specifically, the Court held that the Township's adoption of a six-month moratorium on October 11, 2000 prohibiting the acceptance, consideration, and approval of all wireless communication tower applications, including further consideration and approval of pending applications had the effect of prohibiting the provision of personal wireless services in violation of § 332(c)(7)(B)(i)(II). The Court also held that the Township's denial of APT's CUP application based on the moratorium was not supported by substantial evidence in a written record, as required under § 332(c)(7)(B)(iii).[1] A violation of either of these provisions entitled APT to a remedy, which in this case, the Court determined would be an injunction directing the Township to issue APT a CUP on the Rydeen site to construct its communications tower within twenty days of the Court's order. Final judgment was entered on June 22, 2001.

On July 2, 2001, the Township moved pursuant to Rule 52(b) to amend the Court's findings on the basis that the Court relied on a material fact that is not in the record. Specifically, the Township maintained that APT had not conducted an Environmental Assessment as that term is defined in 47 C.F.R. §§ 1.1308; 1.1311. The Township contends that once that finding is negated from the record, the Court must conclude that the Township's reliance on the NPS letter of September 7, 2000 was reasonable, whether it relied on an October 9, 2000 letter or not, and thus its enactment of

[1] APT also argued that the Township failed to act on its CUP application within a reasonable time in violation of § 332(c)(7)(B)(ii) of the TCA. However, because the Court had already found two violations of the TCA, either of which entitled APT to the relief it sought, the Court did not reach this issue.

a six-month moratorium and denial of APT's CUP application is supported by substantial evidence in a written record.

Shortly before midnight on July 26, 2001, after having been granted a two-week extension to comply with the Court's Order,[2] the Township Board passed a motion in a 3-1 vote to issue APT a CUP. The motion that passed, however, imposed several different conditions than those imposed in connection with APT's October CUP application. In particular, the CUP that the Township voted to issue required APT to construct a 130-foot silo rather than a monopole; that the silo be located at a different location on the Rydeen site than the one surveyed by APT and for which APT had not secured lease rights; and that APT's antennas be mounted **inside** the silo. The Board also did not issue the CUP that evening but rather passed a motion directing its town attorney to draft the CUP and return it to the Board within the week.

On July 27, 2001, APT moved for an order to show cause why the Township should not be held in contempt of the Court's July 22, 2001 Order. APT maintained that the plain language of the Court's memorandum opinion and order made clear that the Township's violation of two provisions of the TCA entitled APT to the CUP that it was denied on October 26, 2000. That same day, the Township moved pursuant to Rules 60(b)(2) and (6) to set aside and vacate the Court's final judgment based on newly

[2] On July 12, 2001, the last day upon which the Township had to comply with the Court's Order, the Township moved for an extension of time, to which APT objected. The Court granted the Township's motion, giving them until July 26, 2001 to issue APT its CUP. In granting the Township an extension, however, the Court stressed that "no further extensions will be granted absent a showing of compelling circumstances." Order dated July 12, 2001 [Docket No. 37].

discovered evidence. On August 2, 2001 these motions came before the Court for oral argument.

## ANALYSIS

### I. Township's Rule 52(b) Motion to Amend Findings

At the outset, the Court must address APT's argument that the Township's Rule 52(b) motion is procedurally improper. APT emphasizes that this case was decided on summary judgment. In ruling on this motion, the Court issued a Memorandum Opinion and Order and did not make formal findings of fact. The express language of Rule 52(a), to which Rule 52(b) refers, starts out: "[i]n all actions tried upon the facts without a jury, or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58 . . . ." On this basis, APT contends that the fact-finding contemplated in Rule 52 does not apply to a motion for summary judgment and thus, the Township's post-judgment motion in this context is procedurally inappropriate.

Several courts are in agreement with APT's reading of the rule. *See Florham Park Chevron, Inc. v. Chevron U.S.A. Inc.*, 680 F. Supp. 159, 161 (D.N.J. 1988) (holding that defendant's 52(b) motion for reconsideration or amendment of findings following summary judgment motion is procedurally inappropriate because a district court does not engage in the type of "fact-finding" described in Rule 52); *All Hawaii Tours, Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648 (D. Haw. 1987) (Rule 52(b) motion to amend findings on summary judgment motion was procedurally improper because findings of fact on summary judgment motion "are not findings of fact in the strict sense

that the trial court has weighed evidence and resolved disputed factual issues"), *aff'd, All Hawaii Tours, Corp. v. Polynesian Cultural Ctr.*, No. 87-2427, 87-2619, 1998 WL 86203 at *1 (9th Cir. Aug. 16 1988) ("The district court observed, correctly, that this is not properly a Rule 52(b) motion.") (unpublished decision) (*rev'd on other grounds*).

Although the Township cites to a footnote in an Eighth Circuit decision as support for a broader reading of the rule, *Lorin Corp. v. Goto & Co., Ltd.*, 700 F.2d 1202, 1205 n. 7 (8th Cir. 1983), that decision involved findings of a magistrate judge later adopted by the district court. *Id.* at 1204-05. It did not arise in the context of a summary judgment motion, as is the case here. Thus, in the absence of an Eighth Circuit decision directly on point, the Court agrees with APT and the decisions supporting its reading of the rule and concludes that the Township's motion is not an appropriate motion before the Court.[3]

Even if the Township's 52(b) motion is procedurally proper and the Court considered the merits of the Township's motion, the Court would still conclude that the Township's adoption of the moratorium and denial of APT's application is not supported by substantial evidence in the written record.

When the Court stated in its order that APT had completed an environmental assessment, the Court was referring and relying upon the NEPA checklist submitted as part of the record before the Court. While that review may or may not have been an

[3] Although it appears that the Township could have brought its motion under either Rule 59(e), *see Patel v. Lutheran Med. Ctr.*, 775 F. Supp. 592, 596 (E.D.N.Y. 1991) (explaining that most courts allow a motion to amend a grant of summary judgment to be brought under Rule 59(e)); *Kort v. Western Surety Co.*, 705 F.2d 278, 280-81 (8th Cir. 1983) (motion under Rule 59(e) to reconsider prior grant of summary judgment proper) or under 7.1(g) of the Local Rules, the Township did neither.

Environmental Assessment (EA) as that term is expressly defined in 47 C.F.R. § 1.1308, the crucial fact is that APT's engineering consultant examined all eight areas that the FCC has determined may have a significant impact on the environment and reported that APT's project affected none of the eight areas identified.[4] It was in conjunction with this investigation that APT's consultant contacted the State Historical Preservation Office ("SHPO") and obtained the August 8, 2000 letter from Brita Bloomberg, Deputy State Historic Preservation Officer, in which the SHPO concluded that "**no properties eligible for or listed on the National Register of Historic Places** will be affected by this project." (Emphasis in original.)

Based on this record, the Court still finds that the August 8, 2000 letter making a "no adverse impact" determination sufficiently resolved the historic property concerns raised in the September 7, 2000 NPS letter.[5] A recent First Circuit decision confirms that APT's NEPA investigation and the SHPO's no adverse impact determination sufficiently resolved any issue with the FCC. *See Brehmer v. Planning Bd. of the Town of Wellfleet,* 238 F.3d 117 (1st Cir. 2001). In *Brehmer*, a group of citizens brought suit challenging a town's issuance of a special zoning permit allowing a telecommunications provider to construct a wireless communications tower in the steeple of a historic church.

[4] The FCC has determined that facilities for personal communications services generally do not have environmental effects with eight exceptions that the FCC has concluded may have a significant environmental effect. These exceptions relate to 1) wilderness areas; 2) wildlife preserves; 3) endangered species; 4) **historic places**; 5) Indian religious sites; 6) floodplains; 7) major land alterations (wetland, deforestation); 8) towers with high intensity lights. 47 C.F.R. § 1.1307(a)(1) to (a)(8) (emphasis added).

[5] At oral argument, Township's counsel confirmed in response to the Court's inquiry that of the eight designated areas listed in the FCC regulations, the only area that could be an issue is the impact on historic structures.

*Id.* at 118. One of the challenges plaintiffs made was that the carrier failed to comply with NEPA and section 106 of the National Historic Preservation Act in obtaining its permits from the Town Board. *Id.* at 123. In rejecting the plaintiffs' claim that an Environmental Assessment concerning the effect on historic properties was necessary, the court stated:

> Under NEPA, wireless providers need only conduct environmental assessments of the telecommunications-tower projects if the construction would have a "significant environmental effect," as that term is defined under the regulations. *See* 47 C.F.R. § 1.1306. In this case, the SHPO's "no adverse-effects" determination led Omnipoint to conclude that the church steeple construction did not fall within any of the "significant environmental effect" categories under the regulations, and that an environmental assessment was therefore unnecessary. In making this determination, Omnipoint fulfilled its rather modest obligations under NEPA.

*Id.*

As for the Township's continued reliance on an October 9, 2000 letter from Dennis Gimmestad, the Court emphasizes again that there is no evidence in either the October 11, 2000 Board meeting minutes nor in the October 26, 2000 Findings of Fact and Decision denying APT's CUP application that the Board considered this letter in making its decisions. However, even viewing the facts in the light most favorable to the Township and assuming that it did rely on that letter, the Court reaffirms its discussion in its original order. Additionally, as the Court noted at the motion hearing, the letter never affirmatively identifies any historical properties which may be affected by the project. Rather, the letter merely states, in the vaguest generalities, that there is a need to follow procedures and determine if the project has any adverse effects on historic properties.

Again, the Court believes that the August 8, 2000 letter adequately made that determination and concluded that no historic properties were affected.

The Court thus concludes, as it did in its June 22, 2001 Order, that the Township's denial of APT's CUP application on the basis of the historic property concern discussed in the September 7 and October 9 letters is not supported by substantial evidence in the written record.

## II. "Newly Discovered Evidence"

Rule 60(b)(2) provides for relief from final judgment on the basis of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). Rule 60(b)(6) more broadly allows for relief from final judgment for "any other reason justifying relief from the operation of the judgment." *Id.* (b)(6). The Township moves according to this rule on the basis of a newly discovered letter dated January 26, 2001 from Dennis Gimmestad at the SHPO to APT's agent and engineer, Matt Bartus.

The Court need not delve into the substance of this letter because it is irrelevant to the issue of whether the Township's imposition of a moratorium on October 11, 2000 and its subsequent denial of APT's CUP application on October 26, 2000 was supported by "substantial evidence in the written record" under §332(c)(7)(B)(iii). "The record" for purposes of substantial evidence review consists of the evidence before the Township at the time it made its decisions in October 2000. Quite clearly, a letter that was not in existence until January 26, 2001 could not have had any bearing on the Township's

decisions in October 2000. For these reasons, the Township's motion under Rule 60(b)(2) and (6) is denied.

### III. APT's Contempt Motion

The final motion before the Court is whether to hold the Township in contempt for failing to comply with the Court's June 22, 2001 Order. Upon consideration and review, the Court will not hold the Township in contempt, however, the Court orders the Township to reimburse APT for its attorney's fees and costs incurred in connection with filing this motion. The Court also makes clear that APT is entitled to the same CUP at the same Rydeen site that it would have received had there been no violations of the TCA. The Township is thus ordered to issue the CUP as applied for by APT subject only to the eight conditions recommended by the Town Planner[6] during the processing of

---

[6] According to the September 27, 2000 report, these conditions are:

1. The tower is permitted as a 130-foot monopole, with a maximum of 12 antennas.
2. The tower must be "eggshell" in color.
3. The equipment building is 8-feet by 12-feet in size, and must be constructed of brick or decorative brick.
4. A revised landscape plan must be submitted and approved prior to any construction on the site. It must show:
   a. The landscaping is inside of the leased area;
   b. Landscaping that screens the fence, such as tree clusters or shrubs;
   c. Some treatment of the area within the fence: grass, shrubs;
   d. Silver Maple trees are not allowed.
   e. All trees must be at least 2-1/2 inch caliper, all shrubs must be 6 gallon or larger;
   f. Additional landscaping around the building;

(Footnote continued on next page.)

APT's permit application prior to the October 2000 decisions. If there is any further confusion on the part of the Township as to what the Court is requiring in this Order, the Township is ordered to seek clarification from the Court, and not to presume that it can impose new conditions. In the Court's view, that right was forfeited by the Township's illegal actions in October 2000.

## ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Amended Findings [Docket No. 32] is **STRICKEN**;

2. Defendant's Motion for Relief from Judgment under Rule 60(b)(2) and (6) [Dockct No. 40] is **DENIED**;

3. Plaintiff's Motion for Order of Contempt of the Court's June 22, 2001 Order [Docket No. 43] is **DENIED**.

4. The Court orders defendant Stillwater Township to issue within **ten (10) days** of this Order the CUP as applied for by APT subject to the eight conditions

---

(Footnote continued.)

g. Maintenance of the landscaped area must be assigned to the lease.

5. The tower owners shall, in good faith, lease space to other users when there is space available.

6. All rules and regulations of the FCC and the FAA must be met and complied with.

7. No lights, reflectors, flashers, daytime strobes, steady nighttime red lights or other illuminating devices are allowed.

8. No advertising or identification signs are allowed.

recommended by the Town Planner during the original processing of APT's permit application and any additional modifications agreed to by APT.

5. Within twenty (20) days of this Order, APT shall submit an affidavit setting forth the attorney's fees and costs it expended in bringing its motion for an order to show cause why the Township should not be held in contempt.

DATED: August 15, 2001
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500